UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-63034-CIV-ALTMAN/Hunt

**SUPRENA DANIELS**,

    *Plaintiff*,

v.

**ANDREW SAUL**,
*Commissioner of the Social Security Administration*,

    *Defendant*.

_____/

# ORDER

The Plaintiff, Suprena Daniels, appeals the Defendant's denial of her application for Social Security Disability Benefits. The parties have filed cross-motions for summary judgment—*see* Plaintiff's Motion for Summary Judgment ("Pl. MSJ") [ECF No. 13]; Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def. MSJ") [ECF No. 14]—which this Court referred to a United States Magistrate Judge for a Report and Recommendation (the "Report"), *see* Clerk's Notice of Assignment [ECF No. 2].

In his Report [ECF No. 18], the Magistrate Judge recommended that the Plaintiff's Motion be denied and that the Defendant's Motion be granted. *See* Report at 9. The Plaintiff timely objected. *See* Objections [ECF No. 19]. The Court has conducted a *de novo* review of those portions of the Report to which the Plaintiff has objected[1] and, for the following reasons, now **REMANDS** this case to the Commissioner for further consideration consistent with this Order. The reason for the remand is

---

[1] *See* FED. R. CIV. P. 72(b)(3) ("*Resolving Objections.* The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

1

simple: while the ALJ gave "considerable weight" to the opinions of one of the Plaintiff's doctors, she failed to discuss (or otherwise explain the omission of) one of the doctor's subsidiary findings regarding the Plaintiff's physical limitations.

## BACKGROUND

The Plaintiff sought Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 401, *et seq. See generally* Compl. [ECF No. 1]. After the Defendant[2] denied her claim, she appealed, first, to an ALJ—who affirmed the Defendant's decision—and then to the Appeals Council, which denied review of her case. *See id.* at 1. On December 10, 2019, the Plaintiff filed her Complaint, in which she asked this Court to overturn the ALJ's decision. *See generally id.*

In rejecting the Plaintiff's claim, the ALJ applied the Social Security Administration's required five-step sequential evaluation. ALJ Decision [ECF No. 12] at 19 (citing 20 C.F.R. § 404.1520). At Step One, the ALJ found that the Plaintiff "ha[d] not engaged in substantial gainful activity since March 11, 2013, the alleged onset date." *Id.* at 20. At Step Two, the ALJ determined that the Plaintiff had five "severe" impairments: (1) nervous system disorder/polyneuropathy; (2) bilateral foot hyperkeratosis; (3) peripheral neuropathy; (4) mild arthritis changes to AC joints; and (5) mild osteoarthritis of the first carpometacarpal joints bilaterally. *Id.* at 20–21. So far so good. At Step Three, though, the ALJ concluded that the Plaintiff's impairments—separately or together—did not "equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*

This conclusion required the ALJ to formulate the Plaintiff's Residual Functional Capacity ("RFC"). *See* 20 C.F.R. § 404.1520(a)(4)(iv). After considering a variety of medical sources,[3] the ALJ held that the Plaintiff's RFC satisfied the exertion level characterized by "light work"—modified by

---

[2] The Defendant is the Commissioner of the Social Security Administration.
[3] The ALJ referenced the testimony and opinions of at least of four doctors: Dr. Samuel Rand (family medicine specialist); Dr. Sultan Ahmed (same); Dr. Tanya Feke (same); and Dr. Barney Greenberg (a podiatrist). ALJ Decision at 23–27.

the following additional limitations:

> She could lift and carry up to 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk for up to two hours total during an 8 hour workday; and sit for six hours during an 8 hour workday; she could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, and be exposed to humidity, wetness, extreme temperatures, vibrating surfaces and tools, along with the occasional use of a cane; she is precluded from climbing ladders/ropes/scaffolds, workplace hazards such as unprotected heights, moving mechanical parts, operating heavy machinery; she could frequently operate a motor vehicle; she also requires level and even flooring or walking surfaces.

ALJ Decision at 22–23.

At issue here is the ALJ's consideration of Dr. Feke's medical opinion, to which the ALJ "gave considerable weight." *Id.* at 27. Dr. Feke ultimately concluded—as the ALJ described—that "the claimant was capable of a reduced range of light exertion on a sustained basis." *Id.* at 27 (referencing Ex. No. B19F - Medical Source Statement of Dr. Tanya Feke [ECF No. 12] at 839–47). The ALJ agreed with Dr. Feke's opinion because "treatment notes as recent as June 2018 show that the claimant had a normal gait, with normal range of motion and no edema." *Id.*

In her only opinion in the record—dated July 8, 2017—Dr. Feke *did* "note[] the claimant's intermittent gait abnormality, [lack of] flare ups, mild arthritis and polyneuropathy, and the lack of neurological deficits." *Id.* at 841. But Dr. Feke also said more than that. Notably, and as relevant here, she found that the Plaintiff was limited to using both hands "frequently"—which she described as between one-third to two-thirds of the time—for activities such as "reaching overhead," "reaching in general," "handling," "fingering," "feeling," and "pushing or pulling." *Id.* at 844.

Having formulated the Plaintiff's RFC—affording, again, "considerable weight" to Dr. Feke's opinion—the ALJ next found that the Plaintiff could not perform her past relevant work as a "housekeeper cleaner." *Id.* at 28. So, before continuing onto Step Five, the ALJ consulted the Medical Vocational Grids to determine whether the Plaintiff was categorically "disabled." 20 C.F.R. § 404, Subpart P, Appendix 2, section 200.00. Because the Plaintiff was in the "closely approaching advanced

3

age" category, had a high school education, and could communicate in English, the ALJ concluded that she fit into Grid 202.13, which (ordinarily) would require a finding of "not disabled." ALJ Decision at 28 (citing 20 C.F.R. § 404, Subpart P, Appendix 2, section 202.13).[4]

But, the ALJ continued, "the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." *Id.* This finding triggered a requirement that the ALJ consult with a vocational expert ("VE") to see if there were jobs that (1) fit within the Plaintiff's RFC, (2) could be performed with the Plaintiff's additional limitations, and (3) existed in significant numbers in the national economy. *See id.*

After hearing testimony from the VE, the ALJ concluded that the Plaintiff could be gainfully employed as either a "gate attendant" or a "ticket seller"—both of which (1) satisfied the Plaintiff's level of exertion, (2) could be performed with the Plaintiff's additional impairments, and (3) existed in significant numbers. *Id.* Since the RFC indicated that the Plaintiff could perform jobs that existed in significant numbers in the national economy, the ALJ held that the Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The Court's review of an ALJ's decision is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This determination—whether the ALJ applied the correct legal standard—is a legal one subject to *de novo* review. *Graham v. Bowen*, 90 F.2d 1572, 1575 (11th Cir. 1986) (citation omitted). "Substantial evidence is more than a scintilla and

---

[4] In other words, where a claimant can perform "all" or "substantially all" of an exertion level's requirements, the Medical Vocational Grids direct a finding of either "disabled" or "not disabled." *See* SSR 83-10p, 65 FED. REG. 75759 (Dec. 4, 2000) ("[W]here the findings regarding each factor coincide with the criteria for the corresponding factor in a rule, that rule applies and directs a decision[.]"). But, where additional impairments limit a claimant from performing all (or substantially all) of an exertion level's requirements, a vocational expert's testimony is necessary to determine whether there are certain jobs within that exertion level that a claimant *can* perform. *Id.*

is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 12 F.3d 1436, 1439 (11th Cir. 1997). The Court may not, however, "reweigh the evidence, or substitute [its] judgment" for the ALJ's—even if the "evidence preponderates against the [ALJ's] decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citation omitted).

## THE REPORT AND OBJECTIONS

The Plaintiff told the Magistrate Judge that the ALJ had erred in three ways. *First*, she said, "the ALJ's decision [was] not based upon substantial evidence as the ALJ fail[ed] to incorporate all of Plaintiff's severe medical conditions into the RFC assessment." Pl. MSJ at 16. *Second*, she continued, "the ALJ fail[ed] to give proper weight and consideration to the medical opinion offered by Dr. Tanya Feke." *Id. Third*, she contended that the "ALJ's decision to apply medical vocational grid rule 202.13 for light exertion instead of grid rule 201.12 [was] not based upon substantial evidence and [did] not follow the proper legal standards." *Id.* at 20. More specifically, the Plaintiff argued that the ALJ erred when she found that, because the Plaintiff could stand for only two hours a day—and because jobs in the light-work category "require[ ] a good deal of walking and standing"—she could perform "light work." *Id.* at 22 (citing SSR 83-10).

The Magistrate Judge found these arguments unpersuasive and, for three reasons, recommended that the Plaintiff's motion be denied. *See* Report at 1. *First*, he determined that, contrary to the Plaintiff's contentions, the ALJ omitted the Plaintiff's purported physical limitations from the RFC because the limitations didn't exist. According to the Magistrate Judge, the ALJ's opinion supported the omission with "findings" and "record citations that support those findings." *Id.* at 6. *Second*, he found that, "although the ALJ gave 'considerable weight' to Dr. Feke's findings, the ALJ indicated that she agreed with Dr. Feke *only to the extent that*, as recently as June 2018, the claimant had 'a normal range of motion.'" *Id.* (citing ALJ Decision at 27). *Third*, he noted that some "light work" jobs could be performed in the seated position. And, he added, because the ALJ determined that the

5

Plaintiff satisfied the lifting and carrying requirements of the "light work" category—and since the ALJ assessed the Plaintiff's other exertional and non-exertional impairments when considering the range of jobs she could perform—the ALJ had not erred. *Id.* at 9.

The Plaintiff objects only to the Magistrate Judge's second and third conclusions. *See generally* Obj. As to the second conclusion, she points out that "the fact that some portions of the record may lend support to the ALJ's ultimate findings, does not obviate the legal requirement that the ALJ properly explain the weight she gave to Dr. Feke's medical opinion." *Id.* at 1. The Plaintiff advances the same argument as to the third conclusion: that the ALJ did not properly explain why she categorized the Plaintiff's RFC as "light" rather than "sedentary." *Id.* at 3. In her words, "the citations to SSR 83-10 provided in the [Report] for a 'light version' of sedentary exertion shows exactly the kind of consideration and explanation which is required by the law." *Id.* The problem, though, was that the Magistrate Judge "provided these explanations, not the ALJ." *Id.* Whereas (she continues) the ALJ failed to explain that she "was even aware of the consequences of finding the RFC to equate to light instead of sedentary exertion," the analysis and explanation "so generously provided by the Magistrate Judge in the [Report] is precisely the type of explanation the ALJ was required to do." *Id.* at 3 (internal citations omitted). The Defendant did not respond to these objections, *see* Docket, and the time to do so has passed, *see* S.D. FLA. L.R. MAGISTRATE RULES 4(b).

## ANALYSIS

We agree with the Plaintiff as to her first objection.[5] The ALJ erred because, while she afforded "considerable weight" to Dr. Feke's opinion, she did not either incorporate the physical limitations Dr. Feke had found nor explain why she determined that those limitations didn't exist.

---

[5] We thus need not address her second objection.

### I. Residual Functional Capacity

An RFC "is what an individual can still do despite his or her limitations." SSR 96-8p, 61 FED. REG. 34474 (July 2, 1996) (hereinafter "SSR 96-8p"). When calculating an RFC, ALJs "must first identify the individual's functional limitations," which include physical (sitting, standing, walking, lifting, etc.); mental (understanding, remembering, and carrying out instructions); and "other" (skin, vision, hearing, etc.). *See* SSR 96-8p (citing 20 C.F.R. § 404.1545 (b)–(d) & C.F.R. § 404.416.945 (b)–(d)). An RFC must consider both *exertional* capacity (pushing, pulling, carrying) and *non-exertional* capacity (stooping, climbing, reaching, handling, hearing, speaking, etc.) limitations. *Id.*

"An RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* It "must be based on *all* of the relevant evidence in the case record," including "[m]edical history," "[m]edical signs and laboratory findings," "[l]ay evidence," and—as relevant here—"[m]edical source statements." *Id.*; *see also* 20 C.F.R. § 404.1545(a)(3) (defining the types of evidence that may be used to compute an RFC).

Not all medical source statements are created equal. On one end, a treating source—a physician "who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship"—is entitled to *controlling weight*. 20 C.F.R. § 404.1527(a)(2), (c). Other medical opinions, by contrast, get more (or less) weight depending on several factors, including (1) the examining relationship, (2) the treating relationship, (3) supportability, (4) consistency, and (5) specialization. § 404.1527(c).

But, irrespective of the kind of doctor-patient relationship at issue, an "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. This requirement is unambiguous and is *not* subject to harmless error review. As the Eleventh Circuit

has said: "Even if it is possible that the ALJ considered and rejected medical opinions, without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 765 (11th Cir. 2014) (cleaned up); *see also McCloud v. Barnhart*, 166 F. App'x 410, 419 (11th Cir. 2006) ("[H]ere the ALJ neither explained the weight that he gave to [the doctor's] report nor why he discredited [the doctor's] findings regarding [the plaintiff's] ability to engage in prolonged work. On remand, the ALJ must make those determinations."); *Young v. Colvin*, 2016 WL 4921011, at *3 (S.D. Fla. Mar. 10, 2016) ("[The doctor's] opinion conflicted with [a second doctor's] opinion[.] Despite this conflict, the ALJ did not address [the first doctor's] opinion on this issue and explain why it was not adopted—a clear violation of SSR 96–8p. This was reversible error."); *Beasley v. Berryhill*, 2017 WL 4172953, at *4 (M.D. Ala. Sept. 20, 2017) ("The lack of any explanation regarding the discrepancies between the less restrictive RFC and [the doctor's] opinion evidence—which the ALJ afforded unqualified, substantial weight—constitutes legal error.").

## II. Application

The law is clear that, in setting out a claimant's RFC, an ALJ must include *either* "a discussion of reported symptom-related functional limitations" *or* "a discussion about why they cannot be accepted as consistent with the medical and other evidence." SSR 96-8p. In this case, the ALJ didn't include the Plaintiff's fingering and handling impairments in the RFC, and neither side contends otherwise. *See* Pl. MSJ at 18; Def. MSJ at 8. The Defendant, to be sure, argues that the ALJ did not commit reversible error because "the medical evidence does not support additional manipulative limitations." *Id.* As the ALJ noted, the "Plaintiff displayed normal bilateral hand grip strength, as well as no swelling, tenderness, or limitations in the wrists, elbows, or shoulders." *Id.* (citing ALJ Decision at 21).

The Defendant's conclusion may very well be true, but the ALJ still committed legal error

8

when she failed to "explain why [Dr. Feke's] opinion was not adopted." SSR 96-8p. After all, the ALJ accorded "considerable weight to the opinion of Dr. Feke" who found that such limitations *were* present. ALJ Decision at 27; Dr. Feke Opinion at 844.

The Report offers a solution to this discrepancy, noting that "the ALJ indicated that she agreed with Dr. Feke *only to the extent that*, as recently as June 2018, the claimant had a normal range of motion." Report at 6 (emphasis added). But this doesn't save the ALJ's decision because, as the Plaintiff points out, "it is clear there were portions of Dr. Feke's medical opinion with which the ALJ disagreed . . . [the RFC] does not, in any meaningful way, explain the portions of the medical opinion the ALJ omitted. . . . Finally, it is worth repeating that there is not a single sentence in the ALJ's decision that explains her deviation from Dr. Feke's medical opinion: this is clear error." Obj. at 2.

We agree. An ALJ must adopt (or reject) all medical opinions. *See* SSR 96-8p. If a medical opinion is rejected, the ALJ must explain why "the opinion was not adopted." *Id.* Again, the Defendant's position—that the record does not support a finding of fingering limitation, *see* Def. MSJ. at 8—may be correct, but it is still inapposite here. On remand, of course, the ALJ will be free to reject Dr. Feke's testimony—in whole or in part. But, if she does so, she must explain why.

Our case is on all fours with *Miodonski v. Colvin*, 2014 WL 3656271, at *5 (S.D. Fla. July 22, 2014). In *Miodonski*, the ALJ gave "some weight to [the doctor's] opinion because it is consistent with the medical evidence of record." *Id.* That doctor, though, had determined that the plaintiff was "moderately limited" in "her ability to complete a normal workday and workweek without interruptions[.]" *Id.* Despite giving "some weight" to that doctor's opinion, the plaintiff's RFC "did not contain her moderate limitations"; nor did the ALJ "address or explain his reasons for disregarding the moderate limitations[.]" *Id.* The Court thus concluded that "the ALJ committed legal error because he failed to articulate reasons for disregarding the moderate limitations . . . and his RFC assessment of [the plaintiff] improperly conflict[ed] with [the doctor's] opinion." *Id.*

9

Just so here. The ALJ gave "considerable weight" to (and adopted) Dr. Feke's medical opinion. But she didn't include in the RFC an assessment of *all the limitations* Dr. Feke had documented. Nor did she explain why she omitted those limitations. The ALJ may ultimately have ample support for her finding that Dr. Feke's opinions are inconsistent with the Plaintiff's RFC. But the ALJ must be the one to explain why this is so.

\*\*\*

After careful consideration of the entire record, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. The Report [ECF No. 18] is **NOT ADOPTED**.
2. The Plaintiff's MSJ [ECF No. 13] is **GRANTED**.
3. The Defendant's MSJ [ECF No. 14] is **DENIED**.
4. Pursuant to § 205(g) of the Social Security Act, this case is **REMANDED** to the Commissioner of Social Security for proceedings consistent with this Order. On remand, the Commissioner shall state with particularity whether he adopts Dr. Feke's medical opinion in whole, in part, or not at all. If he does not accept the opinion in whole, he shall explain why not.
5. The Clerk shall **CLOSE** this case.
6. All other pending motions are **DENIED as moot**, all hearings are **CANCELLED**, and any deadlines are **TERMINATED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of March 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record